UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARK WHITE,**

       **Plaintiff,**          **CIVIL ACTION NO. 13-CV-15073**

   **vs.**        **DISTRICT JUDGE AVERN COHN**

       **MAGISTRATE JUDGE MONA K. MAJZOUB**

**ROSILYN JINDAL, et al.,**

       **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Mark white, currently a prisoner at the Gus Harrison Correctional Facility in Adrian, Michigan, filed this action under 42 U.S.C. § 1983 against Defendants Roslyn Jindal (a Physician's Assistant), Corizon Health Incorporated (Corizon) and Correctional Medical Services (CMS)[1] (health-care contractors that provide services to the Michigan Department of Corrections (MDOC)), Paul Klee (the Warden of the Gus Harrison Facility), and Dr. William Nelson (a former MDOC physician). (Docket no. 1 at 1-2.) In his Complaint, Plaintiff alleges that Defendants Jindal, Nelson, Corizon, and CMS violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs. (*Id.* at 4.) Plaintiff alleges that Defendant Klee violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments when he "placed plaintiff in grave personal danger of death or physical injury in violation of MDOC policy." (*Id.*) Through his Complaint, Plaintiff seeks "punitive, compensatory & declaratory damages in excess of [$25,000]

---

[1]Plaintiff alleges that Correctional Medical Services is now known as Corizon. (*See* docket no. 1 at 2.)

on the deliberate indifferent (sic) claims" and "immediate injunctive treatment & transfer to prevent death or physical injury." (*Id.*)

In his Amended Complaint,[2] Plaintiff adds four additional defendants to this matter: (1) Thomas G. Finco (Deputy Director of the MDOC); (2) Bill Collier (the lead psychiatrist at the Gus Harrison facility); (3) Lee McRoberts (the Deputy Warden at the Gus Harrison facility); and (4) C. Condon (a Resident Unit Manager at the Gus Harrison facility). (*See* docket no. 14 at 1.) Plaintiff also adds two additional claims for violations of the Americans with Disabilities Act, 21 U.S.C. § 12101, and for violations of Michigan's Handicap Civil Rights Laws, M.C.L. 37.1103.[3] (*Id.* at 2.)

Before the Court are Plaintiff's Emergency Motion for Immediate Temporary Injunction to Prevent Physical Injury or Death (docket no. 3), Plaintiff's Motion for Expedited Review for Immediate Restraining/Injunctive Order (docket no. 10), and Plaintiff's Motion for Judgment on the Pleadings (docket no. 19).[4] Defendants Jindal and Corizon responded to Plaintiff's Motion for Judgment on the Pleadings. (Docket no. 25.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 12.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.    Recommendation

---

[2]Concurrent with this Report and Recommendation, the undersigned has entered an Opinion and Order granting Plaintiff's Motion to Amend (docket no. 13).

[3]The undersigned will refer to Defendants Jindal, Corizon, CMS, Nelson, Finco, and Collier as the "Medical Defendants;" the undersigned will refer to Defendants Klee, McRoberts, and Condon as the "MDOC Defendants."

[4]Also pending in this matter is Defendants CMS and Nelson's Motion to Dismiss (docket no. 22). The undersigned will address Defendants' Motion in a separate Report and Recommendation.

For the reasons stated herein, the undersigned recommends that the Court grant Plaintiff's Emergency Motion for Immediate Temporary Injunction [3]; deny Plaintiff's Motion for Expedited Review for Immediate Restraining/Injunctive Order [10] as moot in light of granting his prior motion; and deny Plaintiff's Motion for Judgment on the Pleadings [19]. Therefore, the Court should order Defendants to transfer Plaintiff to an MDOC facility that does not have a "high concentration" of members of the Gangster's Disciples prison gang.

## II.     Report

### A.     Facts[5]

#### 1.     Deliberate Indifference

Plaintiff asserts that in 2008, while he was incarcerated at West Shoreline Correctional Facility in Muskegon Heights, Michigan, he was "under the care of [Defendant] Nelson." (Docket no. 14 at 2.) Plaintiff alleges that in early 2009, he began to show signs of diabetes, including losing weight, dry mouth, frequent urination, dizziness, disorientation, and bloody stool. (Docket no. 14 at 3; *see also* docket no. 1 at 2.) Nevertheless, Plaintiff claims, Nelson told Plaintiff that he was "[t]here to discuss hepatitis C treatment" and that if he wanted to discuss any of his other symptoms, Plaintiff would have to "put in another kite and pay the $5.00 co-pay charge ." (*Id.*) Plaintiff further claims that Nelson's directive was based on CMS's "policy, practice, habit & custom . . . to DEMAND a five dollar co-pay for separate diagnosis (sic)." (*Id.*) Plaintiff asserts that "[a]s a result of the deliberate indifference, [he] was taken to [the hospital] on February 5, 2009 with a blood sugar level in excess of 500;" Plaintiff alleges that he "has been an insulin dependent Type II

---

[5]Because the undersigned has granted Plaintiff's Motion to Amend concurrent with entering this Report and Recommendation, the facts herein are derived from Plaintiff's Amended Complaint (docket no. 14).

diabetic since that date." (*Id.* at 3, 6-7)

Plaintiff then alleges that by May 2013, his blood-sugar levels had increased to "200 twice daily." Plaintiff claims that he then met with Defendant Jindal, who first increased Plaintiff's insulin intake and then added "Metformin" pills. (*Id.*) Plaintiff contends that after several months of "no results," he began "demanding insulin or some therapy that would lower [his] blood sugar levels." (*Id.*) Plaintiff notes that Jindal "blamed the levels on plaintiffs (sic) eating habits" and then claims that she "refused to change insulin claiming the brands were not approved formulary . . . and basically refused any further treatments." (*Id.* at 3-4.) Plaintiff alleges that he filed a grievance regarding his medical care and that in retaliation, "Jindal charged plaintiff his entire monthly allottment (sic) of $11.00 as co-pay for demanding effective treatment."[6] (*Id.* at 4.) Therefore, Plaintiff asserts that because he could not afford to be without funds, he stopped requesting service, and his blood-sugar levels remain high. (*Id.*) Plaintiff claims that Jindal was deliberately indifferent to his medical needs when she "refused to provide effective treatment" for his diabetes and that she "conspire[d] with Corizon . . . to deny treatment unless a $5.00 co-pay [was] charged." (*Id.* at 14.)

Plaintiff also alleges that in April 2010, after he was diagnosed as a Type II diabetic, but before he saw Jindal, he was assessed for the use of orthopedic shoes, which are required for prisoners with diabetes. (*Id.* at 4.) Plaintiff contends that he had appropriate footwear from that time until August 2012, when Defendant Finco "ordered health care to only use [Michigan State Industries (MSI)] athletic shoes for health care needs." (*Id.*) Plaintiff asserts that the new MSI shoes "cause foot sores and [that he] cannot walk or exercise in them which creates more health

---

[6]In his original Complaint, Plaintiff blamed this charge on "Corizon." (Docket no. 1 at 3.)

problems." (*Id.*) Plaintiff, therefore, asserts that "Finco [, who] is not a trained medical provider[,] is using his position to deny proper treatment in the form of correct diabetic shoes in violation of [the Eighth Amendment]." (*Id.* at 7.) Plaintiff also alleges that "Nelson, Jindal, Collier, Finco, [CMS] and Corizon . . . are violating provisions of the [ADA] by failing to provide proper treatments [for his Diabetes]." (*Id.*)

Finally, Plaintiff asserts that in 2012, the psychiatric review board (which he implies is run by or somehow influenced by Defendant Collier) took Plaintiff off his "long term depression medication," Welbutrin SR. (*Id.* at 4-5, 7.) Plaintiff contends that use of Welbutrin was discontinued throughout the Michigan prison system because of widespread abuse. (*Id.* at 5.) He asserts, however, that because he could not get Welbutrin, he "had to endure trials of several different medications and the side effects since that date looking for a suitable replacement." (*Id.*) Plaintiff asserts that this treatment has violated his rights and that he is "being denied any medical or treatments at all" because the Gus Harrison Facility "has no full time psychiatrist for Out (sic) patient therapy" (as of the time Plaintiff filed his Amended Complaint). (*Id.*)

### 2. Other Violations

In addition to his deliberate indifference claims, Plaintiff alleges that in October 2013, he was elected to the Warden's Forum. (*Id.*) In this position, Plaintiff was to bring housing complaints to his unit manager and Defendant Klee. (*Id.*) Plaintiff alleges that due to an "explosion of thefts & fights due to gang activity" in November 2013, Plaintiff was asked by his assistant unit managers, King and Donaghy, to provide anonymous information regarding the gang activity. (*Id.*) Plaintiff "felt pressured and threatened," because one gang, the Gangsters Disciples, "has been known to stab inmates for merely saying their names out loud." (*Id.*) Nevertheless, Plaintiff refused to provide

5

any information. (*Id.*) Plaintiff further alleges that on November 21, 2013, he met with Klee, Defendant McRoberts, and Defendant Condon. (*Id.*) During this meeting, Plaintiff "was outspoken in his belief that administrations (sic) threats to penalize the entire population for gang activity was wrong;" he also voiced concerns over library-access times. (*Id.*) Plaintiff contends that after this meeting, Klee also asked him to provide anonymous information related to the gangs. (*Id.*) Plaintiff states that he again felt pressured and threatened, but he still refused. (*Id.*)

Plaintiff asserts that on November 22, 2013, King and Donaghy took all of his property and issued him two "major misconducts" in retaliation for his refusal to cooperate. (*Id.* at 6.) Moreover, Plaintiff claims that on December 3, 2013, Condon presided over a hearing related to Plaintiff's misconduct and "within hearing range of numerous inmates . . . read a misconduct written by Donaghy . . . [which] contained the words "informant & gangsters disciples." (*Id.*) Plaintiff alleges that Condon "made sure [he] could be overhead by inmates and that he now fears for his life after being called a snitch. (*Id.*; *see also* docket no. 1 at 4.)

Plaintiff also alleges that on December 4, 2013, the day after his hearing, Condon had Plaintiff moved to a new unit that has "numerous gangsters disciples" and that on December 8, 2013, Plaintiff was assaulted by two members of the Gangsters Disciples and threatened with future beatings;[7] they specifically noted that "if any members were transfered (sic) or received misconducts, plaintiff would be stabbed or killed." (*Id.* at 6; docket no. 10 at 5; *see also* docket no.

---

[7]Plaintiff does not describe the nature of this "assault," but he provided two health-care reports in support of his statement. (Docket no. 10 at 41-42.) In a meeting with his mental health provider, Plaintiff indicated that he was struck in the forehead and that if he did not provide protection money, he would "again be assaulted, and this time much worse." (*Id.* at 41.) His physical health report indicates that he was struck above the left eye, "possibly with an object," causing a "superficial abrasion above [his] left brow." (*Id.* at 42.)

20 at 1.) Plaintiff also alleges that these individuals gave him 60 days to provide a phone number and address where someone outside the prison could pick up cash for "protection money." (*Id.*) Plaintiff asserts that he requested protection from McRoberts, but on December 20, 2013, McRoberts "called plaintiff to the Officers station and in front of other inmates and with [Condon] present called plaintiff a liar over the entire incident, denied any move or protection, and then threatened plaintiff [by saying], 'This is the last I want to hear of this matter.'" (*Id.*) Plaintiff, therefore, claims that Klee, McRoberts, and Condon "conspired to punish plaintiff for exercise of his [First Amendment right to] free speech . . . and are refusing to provide proper protection in violation of [the Eighth Amendment]." (*Id.* at 7.)

**B.      Analysis**

       **1.      Plaintiff's Emergency Motion for Immediate Temporary Injunction [3] and Plaintiff's Motion for Expedited Review for Immediate Restraining/Injunctive Order [10][8]**

Plaintiff seeks an order requiring the MDOC (presumably through Defendant Klee) to transfer Plaintiff to "any facility but Bellamy Creek Macomb or Kinross [or an 'MDOC facility knowsn as MTU'] as these facilities have a high concentration of gangster disciples." (Docket no. 3 at 4.) Plaintiff's Motion for Expedited Review seeks the same relief but elaborates on his argument and draws new facts to the Court's attention. (*See* docket no. 10.)

Federal Rule of Civil Procedure Rule 65 authorizes the issuance of preliminary injunctions and temporary restraining orders. The Court may issue a temporary restraining order to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should

---

[8]Having recommended that the Court grant Plaintiff's Motion to Amend, the undersigned will review Plaintiff's remaining motions in light if his Amended Complaint (docket no. 14.)

issue. *First Tech. Safety Sys, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). In deciding a motion for a preliminary injunction, the court should consider whether (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury without the injunction; (3) the preliminary injunction will cause substantial harm to others; and (4) the public interest will be served if the injunction issues. *Id.* (citation omitted). While these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Id. See also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Moreover, "where a prison inmate seeks an order enjoining state prison officials, [courts must] proceed with the utmost care and must recognize the unique nature of the prison setting." *Schuh v. MDOC*, No. 09-982. 2011 WL 7139457, *3 (W.D. Mich. Nov. 10, 2011) (citing *Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir.1984)). Courts should give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.1995). These officials "are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts." *Schuh*, 2011 WL 7139457 at *3 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Bell*, 441 U.S. at 548.

i.  **Likelihood of Success**[9]

Plaintiff's likelihood of success in this matter is unclear. While not set forth specifically as such in his Amended Complaint, Plaintiff's claims against Klee, McRoberts, and Condon appear to be in line with a First Amendment retaliation claim. To establish a claim of retaliation under the First Amendment, an inmate must show that (1) he was engaged in protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between the two. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff's refusal to provide information regarding gang activity in the Gus Harrison Facility may rise to the level of protected conduct. And if true, Defendants' acts of ensuring that Plaintiff was labeled as an informant would likely deter a person of ordinary firmness from refusing to provide information in the future. Nevertheless, aside from Plaintiff's allegations, the undersigned finds no evidence to suggest that Plaintiff's allegations are true or that Defendants' actions were motivated by Plaintiff's refusal to provide the requested information. Thus, while Plaintiff's Complaint may be sufficient to withstand a sua sponte review for dismissal under 28 U.S.C. § 1915, Plaintiff has not met his heavy burden of showing a strong likelihood of success on the merits.

ii. **Irreparable Harm**

The "key word" in determining the harm caused by failure to issue a plaintiff's requested

---

[9] Notably, while Plaintiff is concerned with the quality of medical care at the Gus Harrison Facility, his request for transfer derives mainly from his concerns of personal safety related to Defendants Klee, McRoberts, and Condon allegedly conspiring to label him as an informant against the Gangsters Disciples. Thus, for purposes of this analysis, the undersigned has not considered the likelihood that Plaintiff will succeed on the merits of his deliberate-indifference claim.

injunction is "irreparable." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir.1991). A claim that a plaintiff will be injured, however serious, is not enough. *Id.* Instead, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.* "[T]o substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id.* (internal citations omitted). Plaintiff claims that he was beaten and threatened on December 8, 2013, and that he was warned that he would be beaten further if he did not provide "protection money." Assuming, *arguendo*, that Plaintiff's allegations are true, Plaintiff's risk of irreparable harm is more than mere speculation; it is both certain and immediate.

### iii.    Substantial Harm to Others and the Public Interest

"[T]he administration of state prisons is a matter consigned to the states as part of their sovereign power to enforce the criminal law. In the exercise of this authority, the state has the power to adopt policies it believes are best suited for managing its prisons and assuring the safety and security of those institutions." *In re Wilkinson*, 137 F.3d 911, 914 (6th Cir.1998). Thus, "problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts." *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir.1997).

> [J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.

*Bell v. Wolfish*, 441 U.S. 520, 548 (1979). Plaintiff's request that the Court order Defendants to transfer him to another facility, by its very nature, intrudes on the MDOC's ability to make decision

regarding the care of its prisoners. Such a request effects not only the safety of the plaintiff but also the safety of MDOC staff, other prisoners, and the general public.

Moreover, a prisoner has no Constitutional right to choose his place of confinement; to the contrary, the placement of prisoners within the state correctional system is a basic administrative endeavor in which the courts should not intervene. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46, (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir.1986). Plaintiff does not request that the Court maintain the status quo and prohibit Defendants from transferring him to another facility. Instead, he asks that the Court order Defendants so transfer him, which would require the Court to squarely interject itself into the MDOC's administration. Such an intervention is not in the public interest.

### iv.     Balancing the Factors

This Court finds that, at this stage of the litigation, Plaintiff has not shown a substantial likelihood of success on the merits. The Court also finds that Plaintiff's request gives rise to some level of concern with regard to the safety of others and that Plaintiff's request is not in the public interest. Nevertheless, the undersigned finds it profoundly troubling that the MDOC Defendants have utterly and completely failed to respond to Plaintiff's Motions.[10] This failure gives the Court no basis under which to question Plaintiff's claims that he has, in fact, already been beaten by other inmates, threatened, and extorted for protection money–all based on Defendants' alleged acts. Thus,

---

[10]While Defendants Jindal and Corizon have responded to Plaintiff's request (docket no. 25), the undersigned notes that the recommendation herein is not based on Plaintiff's deliberate-indifference claim. To the contrary, with regard to Plaintiff's deliberate-indifference claim, all of the preliminary injunction/TRO factors favor Defendants. Thus, the undersigned does not recommend ordering the MDOC to transfer Plaintiff due to the quality of his medical care; instead, Plaintiff should be transferred for his own safety.

while the likelihood of success on the merits, the possibility of substantial harm to others, and the public interest all favor denying Plaintiff's Motion, the undersigned gives substantial weight to Plaintiff's likelihood of irreparable harm. When considering the specific, immediate, and substantial threats to Plaintiff's safety (absent any evidence to the contrary), the undersigned recommends granting Plaintiff's Motion.

### 2. Plaintiff's Motion for Judgment on the Pleadings

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Motions for judgment on the pleadings are reviewed under the same standard used for reviewing a motion under Fed. R. Civ. P. 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). The Court must construe the complaint in the light most favorable to the non-moving party, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief. *Id.* (citations omitted). And when determining whether a plaintiff is entitled to a Judgment on the Pleadings, such a judgment may be based on admissions by the Defendant under Fed.R.Civ.P. 8(b). *See, e.g.*, *Encompass Ins., Inc. v. Hagerty Ins. Agency, Inc.*, No. 08-337, 2009 WL 160776, at *6 (W.D. Mich. Jan. 22, 2009).

Notably, the pleadings have not closed in this matter. Indeed, the undersigned has granted Plaintiff's Motion to Amend concurrent with entering this Report and Recommendation. Plaintiff's Amended Complaint adds new Defendants to each of his claims and adds additional claims.[11] Moreover, as Defendants Jindal and Corizon note, Plaintiff's Motion for Judgment on the Pleadings only seeks a judgment on his Motion for Injunctive Relief in the form of a prison transfer.

---

[11]Defendant's Jindal and Corizon did file an Answer to Plaintiff's Amended Complaint concurrently with their Response to his Motion for Judgment on the Pleadings. (Docket no. 24.)

(*See* docket no. 19 at 3.) Thus, to the extent that Plaintiff's Motion seeks a judgment on the pleadings, his Motion is procedurally improper and not yet ripe. And to the extent that his Motion seeks only a prison transfer, his Motion is duplicative of his previous motions. Therefore, the undersigned recommends denying Plaintiff's Motion for Judgment on the Pleadings.

### C.     Conclusion

For the above-stated reasons, the undersigned recommends that the Court grant Plaintiff's Emergency Motion for Immediate Temporary Injunction [3]; deny Plaintiff's Motion for Expedited Review for Immediate Restraining/Injunctive Order [10] as moot in light of granting his prior motion; and deny Plaintiff's Motion for Judgment on the Pleadings [19]. Therefore, the Court should order Defendants to transfer Plaintiff to an MDOC facility that does not have a "high concentration" of members of the Gangster's Disciples prison gang.

### III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 24, 2014                         s/ Mona K. Majzoub
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served up counsel of record and on Plaintiff Mark White on this date.

Dated: March 24, 2014                         s/ Lisa C. Bartlett
                                              Case Manager