**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MARK WHITE,**

                **Plaintiff,**                **CIVIL ACTION NO. 13-CV-15073**

      **vs.**                         **DISTRICT JUDGE AVERN COHN**

                                **MAGISTRATE JUDGE MONA K. MAJZOUB**

**ROSILYN JINDAL, et al.,**

                **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Mark white, currently a prisoner at the Gus Harrison Correctional Facility in Adrian, Michigan, filed this action under 42 U.S.C. § 1983 against Defendants Roslyn Jindal (a Physician's Assistant), Corizon Health Incorporated (Corizon) (formerly known as Correctional Medical Services (CMS)) (health-care contractors that provide services to the Michigan Department of Corrections (MDOC)), Paul Klee (the Warden of the Gus Harrison Facility), and Dr. William Nelson (a former MDOC physician).  (Docket no. 1 at 1-2.)  In his Complaint, Plaintiff alleges that Defendants Jindal, Nelson, Corizon, and CMS violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs.  (*Id.* at 4.)  Plaintiff alleges that Defendant Klee violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments when he "placed plaintiff in grave personal danger of death or physical injury in violation of MDOC policy."  (*Id.*)  Through his Complaint, Plaintiff seeks "punitive, compensatory & declaratory damages in excess of [$25,000] on the deliberate indifferent (sic) claims" and "immediate injunctive treatment & transfer to prevent death or physical injury."  (*Id.*)

1

On February 11, 2014, Plaintiff filed his Amended Complaint and added four additional defendants to this matter: (1) Thomas G. Finco (Deputy Director of the MDOC); (2) Bill Collier (the lead psychiatrist at the Gus Harrison facility); (3) Lee McRoberts (the Deputy Warden at the Gus Harrison facility); and (4) C. Condon (a Resident Unit Manager at the Gus Harrison facility). (*See* docket no. 14 at 1.)  Plaintiff also adds two additional claims for violations of the Americans with Disabilities Act, 21 U.S.C. § 12101, and for violations of Michigan's Handicap Civil Rights Laws, M.C.L. 37.1103.[1]  (*Id.* at 2.)

On March 25, 2014, the undersigned reviewed Plaintiff's Motion for Immediate Temporary Injunction and recommended that the Court grant Plaintiff's Motion because Plaintiff had shown a "specific, immediate, and substantial threat to [his] safety" and because Defendants had failed to provide any evidence to the contrary.  (Docket no. 31.)  On April 22, 2014, the Court adopted the undersigned's Report and Recommendation and ordered that "Defendants shall transfer plaintiff to an MDOC facility that does not have a 'high concentration' of members of the Gangster's Disciples prison gang."  (Docket no. 44.)

Instead of transferring Plaintiff as the Court ordered, Defendants placed Plaintiff in segregation and filed a Motion for Reconsideration.[2]  (Docket no. 47.)  Before the Court are Defendant Klee's Motion for Reconsideration (docket no. 47), Plaintiff's Motion for Contempt (docket no. 49) and his Motion for Immediate Consideration of the same (docket no. 48), Defendant

---

[1]The undersigned will refer to Defendants Jindal, Corizon, CMS, Nelson, Finco, and Collier as the "Medical Defendants" and Defendants Klee, McRoberts, and Condon as the "MDOC Defendants."

[2]Plaintiff alleges that Defendants allowed another inmate to take his property when he was placed in segregation.  (Docket no. 49 at 2.)  This claim, however, is not currently before the Court.

Klee's Motion for Summary Judgment (docket no. 27)[3], and Defendant Corizon and Nelson's Motion to Dismiss (docket no. 22). Plaintiff filed Responses to Defendants' Motions to Dismiss and for Summary Judgment. (Docket nos. 40 and 41.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 12.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.     Recommendation

For the reasons stated herein, the undersigned recommends the following:

• Defendant Klee's Motion to Withdraw his Motion for Summary Judgment [53] should be denied;

• Defendant Klee's Motion for Summary Judgment [27] should be denied;

• Defendant Klee's Motion for Reconsideration [47] should be granted;

• Plaintiff's Motion for Contempt [49] and Motion for Immediate Consideration of the same [48] should be denied as moot;

• Defendants Nelson and Corizons' Motion to Dismiss [22] should be granted;

Additionally, as discussed herein, the Court should sever this matter into two separate cases, one involving the MDOC Defendants and one involving the Medical Defendants. The Court should then revoke Plaintiff's *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g) because Plaintiff

---

[3]On May 5, 2014, Defendant Klee filed a Motion to Withdraw his Motion for Summary Judgment because "both pages 9 and 10 list the same grievance numbers for all relevant grievances." (Docket no. 53.) Defendant, however, attached all of the appropriate grievances to his Motion, and for the reasons discussed herein, the grievance numbers are irrelevant. Therefore, the undersigned will recommend that Defendant's Motion to Withdraw [53] be denied and that Defendant's Motion for Summary Judgment be decided on the merits as discussed herein.

has, on more than three prior occasions, had civil rights claims dismissed on the ground that they were frivolous, malicious, or failed to state a claim on which relief could be granted. The Court should then order Plaintiff to pay the $350.00 filing fee within 28 days and order that failure to do so will result in the dismissal of Plaintiff's remaining claims against the Medical Defendants without prejudice.

**II.     Report**

      **A.     Facts**

            **1.     Deliberate Indifference**

Plaintiff asserts that in 2008, while he was incarcerated at West Shoreline Correctional Facility in Muskegon Heights, Michigan, he was "under the care of [Defendant] Nelson." (Docket no. 14 at 2.) Plaintiff alleges that in early 2009, he began to show signs of diabetes, including losing weight, dry mouth, frequent urination, dizziness, disorientation, and bloody stool. (Docket no. 14 at 3; *see also* docket no. 1 at 2.) Nevertheless, Plaintiff claims, Nelson told Plaintiff that he was "[t]here to discuss hepatitis C treatment" and that if he wanted to discuss any of his other symptoms, Plaintiff would have to "put in another kite and pay the $5.00 co-pay charge ." (*Id.*) Plaintiff further claims that Nelson's directive was based on CMS's "policy, practice, habit & custom . . . to DEMAND a five dollar co-pay for separate diagnosis (sic)." (*Id.*) Plaintiff asserts that "[a]s a result of the deliberate indifference, [he] was taken to [the hospital] on February 5, 2009 with a blood sugar level in excess of 500;" Plaintiff alleges that he "has been an insulin dependent Type II diabetic since that date." (*Id.* at 3, 6-7)

Plaintiff then alleges that by May 2013, his blood-sugar levels had increased to "200 twice daily." Plaintiff claims that he then met with Defendant Jindal, who first increased Plaintiff's insulin

intake and then added "Metformin" pills.  (*Id.*)  Plaintiff contends that after several months of "no results," he began "demanding insulin or some therapy that would lower [his] blood sugar levels." (*Id.*)  Plaintiff notes that Jindal "blamed the levels on plaintiffs (sic) eating habits" and then claims that she "refused to change insulin claiming the brands were not approved formulary . . . and basically refused any further treatments."  (*Id.* at 3-4.)  Plaintiff alleges that he filed a grievance regarding his medical care and that in retaliation, "Jindal charged plaintiff his entire monthly allottment (sic) of $11.00 as co-pay for demanding effective treatment."[4]  (*Id.* at 4.)  Therefore, Plaintiff asserts that because he could not afford to be without funds, he stopped requesting service, and his blood-sugar levels remain high.  (*Id.*)  Plaintiff claims that Jindal was deliberately indifferent to his medical needs when she "refused to provide effective treatment" for his diabetes and that she "conspire[d] with Corizon . . . to deny treatment unless a $5.00 co-pay [was] charged."  (*Id.* at 14.)

Plaintiff also alleges that in April 2010, after he was diagnosed as a Type II diabetic, but before he saw Jindal, he was assessed for the use of orthopedic shoes, which are required for prisoners with diabetes.  (*Id.* at 4.)  Plaintiff contends that he had appropriate footwear from that time until August 2012, when Defendant Finco "ordered health care to only use [Michigan State Industries (MSI)] athletic shoes for health care needs."  (*Id.*)  Plaintiff asserts that the new MSI shoes "cause foot sores and [that he] cannot walk or exercise in them which creates more health problems."  (*Id.*)  Plaintiff, therefore, asserts that "Finco [, who] is not a trained medical provider[,] is using his position to deny proper treatment in the form of correct diabetic shoes in violation of [the Eighth Amendment]."  (*Id.* at 7.)  Plaintiff also alleges that "Nelson, Jindal, Collier, Finco,

---

[4]In his original Complaint, Plaintiff blamed this charge on "Corizon."  (Docket no. 1 at 3.)

[CMS] and Corizon . . . are violating provisions of the [ADA] by failing to provide proper treatments [for his Diabetes]." (*Id.*)

Finally, Plaintiff asserts that in 2012, the psychiatric review board (which he implies is run by or somehow influenced by Defendant Collier) took Plaintiff off his "long term depression medication," Welbutrin SR. (*Id.* at 4-5, 7.) Plaintiff contends that use of Welbutrin was discontinued throughout the Michigan prison system because of widespread abuse. (*Id.* at 5.) He asserts, however, that because he could not get Welbutrin, he "had to endure trials of several different medications and the side effects since that date looking for a suitable replacement." (*Id.*) Plaintiff asserts that this treatment has violated his rights and that he is "being denied any medical or treatments at all" because the Gus Harrison Facility "has no full time psychiatrist for Out (sic) patient therapy" (as of the time Plaintiff filed his Amended Complaint). (*Id.*)

### 2.    Other Violations

In addition to his deliberate indifference claims, Plaintiff alleges that in October 2013, he was elected to the Warden's Forum. (*Id.*) In this position, Plaintiff was to bring housing complaints to his unit manager and Defendant Klee. (*Id.*) Plaintiff alleges that due to an "explosion of thefts & fights due to gang activity" in November 2013, Plaintiff was asked by his assistant unit managers, King and Donaghy, to provide anonymous information regarding the gang activity. (*Id.*) Plaintiff "felt pressured and threatened," because one gang, the Gangsters Disciples, "has been known to stab inmates for merely saying their names out loud." (*Id.*) Nevertheless, Plaintiff refused to provide any information. (*Id.*) Plaintiff further alleges that on November 21, 2013, he met with Klee, Defendant McRoberts, and Defendant Condon. (*Id.*) During this meeting, Plaintiff "was outspoken in his belief that administrations (sic) threats to penalize the entire population for gang activity was

6

wrong;" he also voiced concerns over library-access times. (*Id.*) Plaintiff contends that after this meeting, Klee also asked him to provide anonymous information related to the gangs. (*Id.*) Plaintiff states that he again felt pressured and threatened, but he still refused. (*Id.*)

Plaintiff asserts that on November 22, 2013, King and Donaghy took all of his property and issued him two "major misconducts" in retaliation for his refusal to cooperate. (*Id.* at 6.) Moreover, Plaintiff claims that on December 3, 2013, Condon presided over a hearing related to Plaintiff's misconduct and "within hearing range of numerous inmates . . . read a misconduct written by Donaghy . . . [which] contained the words "informant & gangsters disciples." (*Id.*) Plaintiff alleges that Condon "made sure [he] could be overhead by inmates and that he now fears for his life after being called a snitch. (*Id.*; *see also* docket no. 1 at 4.)

Plaintiff also alleges that on December 4, 2013, the day after his hearing, Condon had Plaintiff moved to a new unit that has "numerous gangsters disciples" and that on December 8, 2013, Plaintiff was assaulted by two members of the Gangsters Disciples and threatened with future beatings;[5] they specifically noted that "if any members were transfered (sic) or received misconducts, plaintiff would be stabbed or killed." (*Id.* at 6; docket no. 10 at 5; *see also* docket no. 20 at 1.) Plaintiff also alleges that these individuals gave him 60 days to provide a phone number and address where someone outside the prison could pick up cash for "protection money." (*Id.*) Plaintiff asserts that he requested protection from McRoberts, but on December 20, 2013,

---

[5]Plaintiff does not describe the nature of this "assault," but he provided two health-care reports in support of his statement. (Docket no. 10 at 41-42.) In a meeting with his mental health provider, Plaintiff indicated that he was struck in the forehead and that if he did not provide protection money, he would "again be assaulted, and this time much worse." (*Id.* at 41.) His physical health report indicates that he was struck above the left eye, "possibly with an object," causing a "superficial abrasion above [his] left brow." (*Id.* at 42.)

McRoberts "called plaintiff to the Officers station and in front of other inmates and with [Condon] present called plaintiff a liar over the entire incident, denied any move or protection, and then threatened plaintiff [by saying], 'This is the last I want to hear of this matter.'" (*Id.*)  Plaintiff, therefore, claims that Klee, McRoberts, and Condon "conspired to punish plaintiff for exercise of his [First Amendment right to] free speech . . . and are refusing to provide proper protection in violation of [the Eighth Amendment]." (*Id.* at 7.)

      **B.**      **Governing Law**

           **1.**      **Summary Judgment Standard**

      "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

8

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### 2.     Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

9

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

C.      **Analysis**

1.      **Defendant Klee's Motion for Summary Judgment**

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action. Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But "while the preferred practice is for inmates to complete the grievance process prior to the filing of an action and to attach to their complaint documentation of that fact, 'because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute.'"

10

Curry v. Scott, 249 F.3d 493, 502 (6th Cir. 2001)(citations omitted).

In that light, the Sixth Circuit "requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011)(internal quotation marks and citation omitted)). And if no remedies are available to exhaust, the plaintiff is relieved of his duty to exhaust before filing a civil-rights action. *See Murphy v. Martin*, 343 F.Supp.2d 603, 605 (E.D. Mich. 2004) (relieving a prisoner of the obligation to exhaust where the issue is not grievable under PD 03.02.130).

It is undisputed that Plaintiff filed his initial grievance in this matter in November 2013. (*See* docket no. 27-4 at 5.) Plaintiff's grievance was denied on December 2, 2013, and Plaintiff filed his instant Complaint on December 13, 2013. (*Id.* at 6; docket no. 1.) Plaintiff did not formally complete the grievance process until February 26, 2014, when Plaintiff received his Step III grievance response (docket no. 27-4 at 2). *See Muttscheler v. Martin*, No. 12-1221, 2013 WL 3730095, at *3-5 (W.D. Mich. July 15, 2013). Thus, Defendant asserts, Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies.

Nevertheless, as Plaintiff asserts, MDOC P.D. 03.02.130 sets forth an enumerated list of issues that are "non-grievable," which includes "[d]ecisions made in hearings conducted by hearing offices of the State Office of Administrative Hearings and Rules, including property disposition, *and issues directly related to the hearing process* (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing)." P.D. 03.02.130(F)(2) (emphasis added). Plaintiff's claims against the MDOC Defendants arise out of their actions in and related to his administrative

11

hearing.  That is, Plaintiff claims that his life was put in danger when MDOC personnel allowed

other inmates to overhear the unit managers' implications that Plaintiff was a snitch against the

Gangster's Disciples in the context of a misconduct hearing.  Thus, Plaintiff's claims are directly

related to the hearing process.  Moreover, even if the Court were to consider that Plaintiff's claims

may be *indirectly* related to the hearing process, Defendants' response to Plaintiff's initial grievance

is decisive:

> Your Step I grievance regarding misconduct hearing issues-appeal misconduct was
> received in this office on 11/27/2013 and was rejected due to the following reason:
> Decisions made in hearing conducted by a hearing officers (sic) of the State Office
> of Administrative Hearings and Rules, including property disposition, and issues
> directly related to the hearing process (e.g., sufficiency of witness statements;
> timeliness of misconduct review; timeliness of the hearing).  Decisions made in
> minor misconducts (sic) hearings, including property disposition.

(Docket no. 27-4 at 6.)  By quoting this section of PD 03.02.130, the MDOC informed Plaintiff that

his issues were nongrievable.  Defendant cannot now assert that Plaintiff failed to exhaust the

grievance process after being told that his issues were nongrievable.  Therefore, because Plaintiff

had no available remedies to exhaust, the Court should deny Defendant's Motion.

### 2.     Defendant's Motion for Reconsideration

Eastern District of Michigan Local Rule 7.1(h)(3) provides for reconsideration if the movant

demonstrates a palpable defect by which the court and the parties have been misled, and further

demonstrates that correcting the defect will result in a different disposition.  "A 'palpable defect'

is a defect which is obvious, clear, unmistakable, manifest, or plain."  *Fleck v. Titan Tire Corp.*, 177

F.Supp.2d 605, 624 (E.D. Mich. 2001) (citation omitted).  "[T]he court will not grant motions for

. . . reconsideration that merely present the same issues ruled upon by the court, either expressly or

by reasonable implication." E.D. Mich. L.R. 7.1(h)(3).  Defendant requests that the Court reconsider

it's April 22, 2014 Order requiring that the MDOC transfer Plaintiff to another MDOC facility "that does not have a 'high concentration' of members of the Gangster's Disciples" because (1) the Gus Harrison facility does not have a high concentration of Gangster's Disciples, (2) "the MDOC has a well-defined process to address prisoner's (sic) protection needs," and (3) "compliance with the Court's Order will put an undue burden on MDOC resources." (Docket no. 47 at 5.)

Defendant asserts that the MDOC presently houses 158 members of the Gangster's Disciples prison gang at its facilities in Michigan and that only 2 of these individuals are housed at Gus Harrison. (Docket no. 47 at 6.) Thus, Defendant argues, transferring Plaintiff to another facility would be counterproductive. Plaintiff asserts that there are at least six members of the Ganster's Disciples in the D-Wing of Unit 2 at Gus Harrison alone.[6] (*See* docket no. 48 at 1.) Plaintiff implies that the MDOC has intentionally misled the Court by stating that there are only two members of the Gangster's Disciples at Gus Harrison so that Plaintiff will be forced to disclose the names of other members, which is precisely the request that lead to Plaintiff's claims. While the undersigned does not accept Plaintiff's allegations at face value, there is a question of fact regarding the number of Gangster's Disciples at Gus Harrison, and therefore, there is a question of fact regarding Plaintiff's safety; the Court should not grant Defendant's Motion on these grounds.

Nevertheless, the undersigned is persuaded by Defendant's assertion that the MDOC should be given an opportunity to address Plaintiff's protection needs through its own internal policy before the Court intervenes. Defendant states that in accordance with this policy, "[o]nce a prisoner requests protection, he is placed in temporary segregation or, if the institution does not have

---

[6]Plaintiff has not yet filed a Response to Defendant's Motion, but Plaintiff's Motion for Immediate Consideration of his Motion for Contempt addresses this issue. And due to the time-sensitive nature of Defendant's Motion, the undersigned has considered these filings in their totality.

temporary segregation, in other suitable housing within the institution to meet the prisoner's protection needs and an investigation is conducted to determine the prisoner's protection needs." (Docket no. 47 at 8.)  Defendant further states that the investigation must be completed within seven business days and that if the investigation determines that Plaintiff's needs cannot be met in his current housing unit, the prisoner will be moved to a different unit or to another institution.  (*Id.* at 8-9.)  Because Plaintiff had not formally requested protection from the MDOC, the Court was not made aware of this policy at the time of it's April 22, 2014 Order.  The undersigned finds that this lack of information is a palpable defect; therefore, the Court should rescind its April 22, 2014 Order and should deny Plaintiff's request for transfer without prejudice.[7]  The undersigned, therefore, also recommends denying Plaintiff's Motion for Contempt and Motion for Immediate Consideration of his Motion for Contempt as moot.

### 3.    Defendant Nelson and CMS's Motion to Dismiss

Defendants Nelson and CMS (and Corizon) assert that Plaintiff's claims are barred by the applicable statute of limitations.  (Docket no. 22.)  Federal courts apply state personal injury statutes of limitations to claims brought under § 1983.  *Wilson v. Garcia*, 471 U.S. 261 (1985); *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005).  For civil rights suits filed in Michigan, the statute of limitations is three years. Mich. Comp. Laws § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44-45 (6th Cir. 1986).  Although statutes of limitations are governed by state law, the question of when civil rights claims accrue remains one of federal law.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."); *LRL Properties v. Portage*

---

[7]The Court need not address whether compliance with its April 22, 2014 Order would place an undue burden on the MDOC.

*Metro Hous. Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995). A cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir.1991).

Defendants argue that Plaintiff's claims against Nelson and CMS accrued on January 15, 2009, the date that Plaintiff saw Dr. Nelson and was allegedly told that he would have to pay an additional $5.00 and put in another kite if Plaintiff wanted to be seen for his diabetes. While Plaintiff does not challenge this assertion, Defendants cannot show that Plaintiff knew or had reason to know of any injury resulting from Dr. Nelson's alleged conduct until he was taken to the hospital on February 5, 2009. Thus, for purposes of Defendants' Motion, and because using either date does not change the outcome, the undersigned will assume that Plaintiff's claims accrued on the later of these two dates, February 5, 2009.

Plaintiff filed his instant Complaint on December 13, 2013, more than 4 years and 10 months after his claim accrued. (*See* docket no. 1.) But as Defendants note, this is the third time that Plaintiff has filed these claims against Defendants Nelson and CMS. *White v. CMS, et al.*, No. 09-217 (W.D. Mich. 2009); *White v. CMS et al.*, No. 10-1082 (W.D. Mich. 2009). Plaintiff's first claim was filed on March 11, 2009, and was dismissed without prejudice on July 6, 2009, when Plaintiff failed to properly serve the defendants and failed to file an Amended Complaint as ordered by the court. (*See* docket no. 22-3 at 2-3.) Plaintiff's second claim was filed on November 4, 2010, and was dismissed without prejudice on July 25, 2011, for failure to pay a filing fee after the court revoked Plaintiff's *in forma pauperis* status. (*See* docket no. 22-5 at 2-4.) Plaintiff filed an appeal on August 22, 2012, which was denied on October 24, 2012. (*See* docket nos. 22-6 and 22-7.) Thus, Defendants' instant Motion turns on if and when the statute of limitations was tolled during the

15

pendency of Plaintiff's prior claims.

The parties do not dispute that the clock began to run on the statute of limitations when Plaintiff's claims accrued. Defendants assert that the statute of limitations was not tolled during the pendency of the March 2009 action because Defendants were not properly served. (Docket no. 22 at 21.) Plaintiff asserts that "[a] dismissal without prejudice is not an adjudication on the merits and therefore, the tolling statute applies. (Docket no. 41 at 1.) Plaintiff may be correct with regard to the narrow issue of whether the tolling statute applies to cases not adjudicated on the merits, but under Michigan law, "[t]he statute of limitations *is not tolled* in the absence of service of process or otherwise acquiring of jurisdiction." *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (Mich. Ct. App. 1968) (citing M.S.A. 27A.5856, Mich. Comp. Laws 1948, § 600.5856 (P.A.1961, No. 236); *State Acc. Fund v. Catsman Co.*, 376 Mich. 194, 136 N.W.2d 21 (1965)) (emphasis added). Therefore, because Defendants were not properly served in the March 2009 action, the statute of limitations was not tolled. Thus, the clock on the statute of limitations ran continuously from at least February 5, 2009, though November 4, 2010, the date that Plaintiff filed his second complaint, for a total of one year, eighth months, and 30 days.

The parties agree that the statute of limitations was tolled while Plaintiff's November 2010 action was pending in the Western District of Michigan from November 4, 2010, though the date of dismissal on July 27, 2011. And in general, a statute of limitations is tolled during appellate proceedings. *See Federal Kemper Ins. Co v. Issacson*, 145 Mich. App. 179, 183 (1985). But Defendants asserts that in this matter, the clock began to run when Plaintiff's claims were dismissed by the district court despite Plaintiff's appeal to the Sixth Circuit. (Docket no. 22 at 21-24.) Plaintiff contends that tolling continued through the Sixth Circuit's denial of his appeal on October

16

24, 2012.  (Docket no. 41 at 2-3.)

In support of their contention, Defendants rely on *Yeo v. State Farm Fire & Cas. Ins. Co.*, wherein the court held that the applicable statue of limitations was not tolled during the pendency of the plaintiff's appeal because "MCR 7.208(A) did not deprive the trial court of jurisdiction to entertain [the second] lawsuit while the appeal of [the first] lawsuit was pending before the [appellate court]."  242 Mich. App. 483, 484-85 (2000).  Plaintiff asserts that *Yeo* only applies to a narrow line of cases wherein the issue on appeal is whether the plaintiff's initial claim should have been dismissed with or without prejudice.  (Docket no. 41 at 2.)  The *Yeo* court did note that the issue before it was a narrow one, but the court did not so limit its holding.  *See Yeo*, 242 Mich. App. At 483-84.  Thus, the undersigned agrees with Defendants that under *Yeo*, a statute of limitations is not tolled during the pendency of an appeal where the plaintiff is not barred from bringing his substantive claim under MCR 7.208(A).

MCR 7.208(A) states, in relevant part, "After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except" in certain enumerated circumstances.  The Western District of Michigan dismissed Plaintiff's claim without prejudice for failure to pay the requisite filing fee after it revoked his *in forma pauperis* status.  Thus, Plaintiff was not barred from bringing his substantive claims while his appeal was pending because his appeal dealt with the narrow issue of whether he should be required to pay the court's $350.00 filing fee.  And while Plaintiff may not have had the funds to pay the filing fee, like in *Yeo*, "MCR 7.208(A) did not deprive the trial court of jurisdiction to entertain this lawsuit while [Plaintiff's] earlier appeal was pending."  Therefore, the statute of limitations was not tolled while Plaintiff's appeal was pending in the Sixth Circuit.

The statute of limitations clock began to run for the second time in this matter on July 27, 2011. At that time, Plaintiff had one year, three months, and one day to file his claim. Thus, to avoid a statutory bar, Plaintiff was required to file his instant Complaint no later than November 28, 2012. Plaintiff filed his Complaint on December 13, 2013, more than a year after the clock had run out. Therefore, Plaintiff's claims against Dr. Nelson, CMS, and Corizon should be dismissed.

### 4.     Misjoinder of Plaintiff's Claims and Plaintiff's *In Forma Pauperis* Status

Under 28 U.S.C. § 1915(g), a court may revoke or deny a plaintiff *in forma pauperis* status where the Plaintiff has, on three or more prior occasions, suffered dismissal of civil rights claims on the ground that the claim was frivolous, malicious, or failed to state a claim upon which relief can be granted (the "Three Strikes Rule"). While addressing Defendants' Motion to Dismiss, the undersigned became aware of Plaintiff's documented status as a frequent filer in violation of the Three Strikes Rule. *See, e.g.*, *White v. CMS, et al.*, No. 10-1082, docket no. 29 (W.D. Mich. May 11, 2011) (revoking Plaintiff's *in forma pauperis status* and noting that Plaintiff's claims in up to seven cases had been dismissed as "frivolous, malicious, or for failure to prosecute" and noting that the Eastern District of Michigan had "already determined that plaintiff falls within [the rule]"). Thus, the Court should, again, revoke Plaintiff's *in forma pauperis status*.

Nevertheless, section 1915(g) provides an exception where an inmate can show that he is "under imminent danger of serious physical injury" and that a "real and proximate" danger exists at the time the complaint is filed. *See id.* (citing *Rittner v. Kinder*, 290 F. App'x 796, 797-97 (6th Cir. 2008)). Here, Plaintiff has shown such a real and proximate danger with regard to his claims against the MDOC Defendants. (*See* docket no. 31 at 9-10 (finding that Plaintiff has shown a likelihood of irreparable harm in the context of his Motion for Preliminary Injunction).)

18

The Defendants in this matter, however, are improperly joined. Rule 20 allows defendants to be joined in one action where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The two groups of Defendants in this matter (the MDOC Defendants and the Medical Defendants) do not satisfy either requirement. Plaintiff's claims against the MDOC Defendants arise under the First, Fifth, Eighth, and Fourteenth Amendments for violations of MDOC policy; and Plaintiff's claims against the Medical Defendants arise under the Eighth Amendment for deliberate indifference to his serious medical needs with regard to his diabetes. Under Rule 21, "Misjoinder of parties is not grounds for dismissing an action." Fed. R. Civ. P. 21. But a court may, on motion or on its own, sever a claim against any party. *Id.*

Because Plaintiff's claims against the two groups of Defendants do not meet the requirements of Rule 20, the Court should sever this matter. Plaintiff's claims against the MDOC Defendants should proceed in one matter, and Plaintiff's claims against the remaining[8] Medical Defendants should proceed in another. After severing this matter, Plaintiff's *in forma pauperis* status should be revoked with regard to his claims against the Medical Defendants for violation of the Three Strikes Rules and because he has shown no imminent danger of serious physical injury with regard to those claims. The Court should then order Plaintiff to pay the $350.00 filing fee within 28 days and order that failure to do so will result in the dismissal of Plaintiff's remaining

---

[8]If the Court adopts this Report and Recommendation and dismisses Plaintiff's claims against Defendants CMS, Corizon, and Nelson, only Plaintiff's claims against Defendants Jindal, Finco, and Collier would remain in the separate action. If the Court does not adopt this Report and Recommendation, Plaintiff's claims against CMS, Corizon, and Nelson should also be included in the separate action.

claims against the Medical Defendants without prejudice.

**C.    Conclusion**

For the reasons stated above, the undersigned recommends the following:

•    Defendant Klee's Motion to Withdraw his Motion for Summary Judgment [53] should be denied;

•    Defendant Klee's Motion for Summary Judgment [27] should be denied;

•    Defendant Klee's Motion for Reconsideration [47] should be granted;

•    Plaintiff's Motion for Contempt [49] and Motion for Immediate Consideration of the same [48] should be denied as moot;

•    Defendants Nelson and Corizons' Motion to Dismiss [22] should be granted;

Additionally, as discussed herein, the Court should sever this matter into two separate cases, one involving the MDOC Defendants and one involving the Medical Defendants. The Court should then revoke Plaintiff's *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g) because Plaintiff has, on more than three prior occasions, had civil rights claims dismissed on the ground that they were frivolous, malicious, or failed to state a claim on which relief could be granted. The Court should then order Plaintiff to pay the $350.00 filing fee within 28 days and order that failure to do so will result in the dismissal of Plaintiff's remaining claims against the Medical Defendants without prejudice.

**III.    Notice to Parties Regarding Objections**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a

20

waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  May 7, 2014                              s/ Mona K. Majzoub
                                                 MONA K. MAJZOUB
                                                 UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**


I hereby certify that a copy of this Report and Recommendation was served up counsel of record and on Plaintiff Mark White on this date.


Dated:  May 7, 2014                              s/ Lisa C. Bartlett
                                                 Case Manager