UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK WHITE,

    Plaintiff,

v.                                                  Case No. 13-15073

PAUL KLEE, LEE McROBERT, and        HON. AVERN COHN
LOUIS CONDON,

    Defendants.

_____/


# MEMORANDUM AND ORDER
# GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 239)
# AND
# DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT (ECF No. 243)
# AND DISMISSING CASE[1]

I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Mark White is proceeding pro se and in forma pauperis.[2] The matter was referred to a magistrate judge for pretrial proceedings. (ECF No. 12). Following motion practice and several reports and recommendations which were adopted by the Court, plaintiff's remaining claims relate to his refusal to "snitch" on fellow inmates and the alleged failure of Paul

---

[1]Upon review of the parties' papers, the Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]Plaintiff is subject to the three strikes rule because of his history of filing frivolous lawsuits. See ECF No. 166, PageID.1690). However, plaintiff was able to proceed with this case by alleging he was under threat of imminent danger. Id.

Klee, the Warden at the Gus Harrison Facility, Lee McRobert, the Deputy Warden, and Louis Condon, a Resident Unit Manager ("defendants") to properly protect him from gang members. In essence, plaintiff is asserting an Eighth Amendment failure to protect claim and a First Amendment retaliation claim.

After the magistrate judge certified that the pretrial proceedings were completed, (ECF No. 201), the parties were permitted to file cross motions for summary judgment directed at the merits of plaintiff's claims. The motions are fully briefed and ready for decision. See ECF Nos. 239, 243. For the reasons that follow, defendants' motion will be granted, plaintiff's motion will be denied, and the case will be dismissed.

## II. Factual Background[3]

Plaintiff's claims arise out of a series of events that took place during November and December of 2013.

Sometime in the fall of 2013, plaintiff was placed on the Warden's Forum at the Gus Harrison Correctional Facility, where he was incarcerated. At that time, Klee was the Warden and McRoberts was the Deputy Warden at Gus Harrison. The Warden's Forum is used "to assist the Warden in identifying and resolving problems which exist in the general population of the institution."

According to plaintiff, at the October and November 2013 Warden's Forum meetings, he requested the facility administration consider expanding law library hours. After the November meeting, plaintiff was, allegedly, solicited by Klee for information

---

[3]As defendants note, plaintiff has made many allegations in his various filings, including adding allegations as the case progressed. This factual background encompasses the fact relevant to the two remaining claims.

regarding gang members at the facility.

On November 22, 2013, plaintiff's cell was randomly searched during a mass shakedown as permitted and required by MDOC policy. Officers conducting the search discovered that plaintiff had a contraband television in his cell and confiscated it. In response to having his television confiscated, plaintiff placed a kite in the mailbox of Assistant Resident Unit Supervisor (ARUS) Donaghy that states in relevant part:

> The T.V. that was taken was purchased from an inmate that went home. My account is in debt preventing me from ever buying one via my account. I am serving a life sentence. I must have a T.V. The list of names we discussed is possible if my items are replaced with [sic] legitimate one, on my property card. Gotta get something for putting myself in danger. The Gangster Disciples had staff in their ranks at Macomb.

(Defendants' Ex. E, Misconduct Report). ARUS Donaghy wrote plaintiff a misconduct for bribery of an employee, stating "[Plaintiff] deliberately offered me a bribe to give/withhold information in an attempt to persuade me to neglect my duties and falsify documents." See id. See also Defendants' Ex. F, Hearing Report.

On or about December 3, 2013, Condon held a "review" with plaintiff regarding the misconduct written by ARUS Donaghy, per department policy. According to plaintiff, the review took place in a room with walls that did not reach the ceiling and with other inmates "coming in and out all the time." (Defendants' Ex. A, Plaintiff's Deposition at pp. 35-36.)

Plaintiff has varying accounts of what took place at the review. At deposition, plaintiff first testified that Condon did not read the misconduct report aloud and claimed that he did not have to. Id. at pp. 36-37. Plaintiff went on to testify that "[w]hen I showed him policy and told him that under the employee discipline policy it's an automatic

termination for admission to not following policy he changed his tune and said, 'okay, yeah, I did read it out loud.'" Id. at pp. 36-37. However, later in his deposition, plaintiff testified as follows:

> Q. So originally [Condon] would not read the ticket but then you told him he had to, right?
> A. No. He read the ticket. Originally he stated to me later on in a confrontation in the unit, he said, 'look me in the eye and tell me I read the ticket out loud to you.' I said 'okay, you're saying you didn't, then here's the policy that required you to under command word shall. Here's the policy that says that you get fired if you deliberately refuse to follow policy, so what are you saying?' He said, 'oh, well, yeah, I read the ticket out loud.'

Id. at p. 40.

Plaintiff's amended complaint features yet another version of the review hearing. He alleges:

> . . . Condon read the misconduct of bribery of an officer written by Mngr. Donaghy. Very loudly RUM Condon read the words informant and gangsters disciples and plaintiff had to ask RUM Condon three (3) times to keep his voice down and stated "Are you trying to get me killed?" RUM Condon stated policy required him to read the ticket out loud . . .

(Defendants' Ex. C, Plaintiff's Amended Complaint at p. 9.)

In his affidavit, Condon states that he began reading the misconduct ticket aloud and stopped when plaintiff asked him not to read the ticket aloud due to the potential that other inmates might overhear. (Defendants' Ex. H, Condon Affidavit.) Condon further states he then confirmed plaintiff knew the substance of the misconduct and read the remainder of the ticket in his head. Id. Condon also says that he did not say the words "snitch" or "Gangsters Disciples" out loud. Id. At the review hearing, plaintiff admitted to attempting to bribe an officer. (Ex. F.)

4

Plaintiff alleges that, after the review of his bribery misconduct, he was moved into a cell with an inmate who did not bathe regularly. Condon confirms that plaintiff was indeed moved. However, Condon says that the reason plaintiff was moved was due to ARUS Donaghy expressing concern that plaintiff was overly familiar with her, as evidenced by his attempt to bribe her leading to the misconduct ticket. Plaintiff filed a grievance with administration at Gus Harrison regarding his new cell mate on December 5, 2013, the day after he was moved. (Defendants' Ex. I, 12-5-13 Grievance.) On December 12, 2013, plaintiff appealed the denial of that grievance, focusing on the fact that his cell mate did not shower. (Defendants' Ex. J, Prisoner/Parolee Grievance Appeal Form.) On December 26, 2013, McRoberts issued a response to plaintiff's original grievance, noting that it was correctly rejected and that plaintiff "will not be allowed to pick his cell mates." (Defendants' Ex. K, Step I Grievance Response).

Finally, plaintiff alleges that on December 8, 2013, he was assaulted by two other inmates whom told him they were members of the Gangster Disciples and that they had overhead Condon reading the misconduct ticket identifying Plaintiff as a "snitch." (Defendants' Ex. C, p. 9.) Plaintiff went to healthcare the next day and was treated for a "very superficial abrasion" above his left eyebrow. (Defendants' Ex. L, 12-09-13 Medical Report, partially redacted.) The report from his healthcare visit notes that plaintiff "states he does not want to speak to custody regarding assault." (Ex. L, p. 2.) Plaintiff also saw an institutional psychologist on December 9, 2013 and told the psychologist that he was assaulted but "did not provide any names or numbers of those involved and <u>maintains that he does not want protection</u>." (Defendants' Ex. L, p. 1) (emphasis added).

5

Plaintiff did not mention this alleged assault in his grievance appeals nor did he file any requests for protection pursuant to MDOC Policy Directive 05.01.140(T). At deposition, plaintiff testified that he never sent a written request for protection to any of the defendants other than Klee, and that he never asked McRoberts for protection in any form. (Defendants' Ex. A, p. 63.)

In his motion for summary judgment, plaintiff attached what he says is a letter he sent to Klee as proof that he was seeking protection (attached as Ex. O to Defendants' motion). Plaintiff also submitted a letter he allegedly sent to Klee where he, again, tries to negotiate providing names of inmate gang members for his television. (Defendants' Ex. P, Letter to Warden Klee.) Klee, however, says that he never received these letters. Indeed, they were returned to plaintiff by Klee's administrative assistant Virgil Webb—as evidenced by the handwritten markings on the sides of the letters because they were attempts at improper communication with the warden of the facility. (Defendants' Ex. Q, Affidavit of Virgil Webb.)

From the above, plaintiff alleges that defendants retaliated against him for filing lawsuits and speaking out at the Warden's Forum by purposefully placing him in a cell with a dangerous and unhygienic inmate and by writing him misconducts. Plaintiff also alleges that defendants failed to protect him from gang members at Gus Harrison leading to the alleged December 8, 2013 assault.

Notably, plaintiff was moved by the MDOC to a different facility because of the danger alleged in this case.

III.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot  produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  In so doing, the Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

IV.  Defendants' Motion for Summary Judgment

A.  Eighth Amendment Failure to Protect Claim

Defendants contend that summary judgment is warranted on plaintiff's failure to protect claim because he cannot show that defendants knew of and disregarded an excessive risk to Plaintiff's safety. The Court agrees.

The Eighth Amendment prohibits MDOC officials from wantonly inflicting pain on incarcerated persons. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Mere negligence is not sufficient to violate the Eighth Amendment, Davidson v. Cannon, 474 U.S. 344, 347 (1986); rather, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind,'" Farmer, 511 U.S. at 834. An Eighth Amendment claim against a prison official alleging a failure to protect has both an objective and a subjective component. Bishop v. Hackel, 636 F.3d 757, 766 (6th Cir. 2011). The objective component requires a showing that "the failure to protect from risk of harm is objectively 'sufficiently serious.'" Id., citing Farmer, 511 U.S. at 833.

The subjective component—which is "deliberate indifference"—requires a plaintiff to demonstrate that a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. In other words, "a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." Bishop, 636 F.3d at 767, citing Farmer, 511 U.S. at 841–842. In order to succeed against multiple defendants, the "subjective component must be addressed for each officer individually." Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005).

8

Here, plaintiff cannot establish that defendants violated his Eighth Amendment rights because he cannot show that he was in objective, physical danger or that defendants were deliberately indifferent to a substantial risk to his safety. Plaintiff's claims are supported solely by his own statements, which are, as explained above, contradicted by the record.

As to the objective component, "[p]risons are inherently dangerous institutions," Lewis v. Casey, 518 U.S. 343, 391 (1996), which "house persons convicted of serious crimes," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), and "idle threats [between prisoners] are a common occurrence," Marsh v. Arn, 937 F.2d 1056, 1069 (6th Cir. 1991), overruled on other grounds by Farmer, 511 U.S. at 825; see also Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996) (noting that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm"). The Eighth Amendment ultimately requires of prison officials is that they "take reasonable measures to guarantee the safety of the inmates themselves." Hudson v. Palmer, 468 U.S. 517, 526–27 (1984).

Viewed in a light most favorable to plaintiff, his allegations that he was in danger from gang members is insufficiently vague—and normalized in the prison setting—to establish objective physical danger. See, e.g., Shaw v. Texas Dep't of Criminal Justice, 46 F. App'x 225 (5th Cir. 2002) (dismissing a complaint when a prisoner did not demonstrate a "particularized threat" of harm); Beasley v. Stephens, No. CIV. 10-895-GPM, 2011 WL 2670189, at *3 (S.D. Ill. July 7, 2011) (explaining that "[a] vague, general fear of harm that is not based on a specific threat is not enough to state a cause of action for deliberate indifference or failure to protect"); Johnson v. Payton, No.

13-11437, 2013 WL 1843979, at *4 (E.D. Mich. Apr. 10, 2013), report and recommendation adopted, No. 13-CV-11437, 2013 WL 1843971 (E.D. Mich. May 1, 2013) (dismissing a failure to protect claim when a prisoner's allegations against prison officials were "very general and lack[ed] any specific detail about their knowledge that [the prisoner's attacker] was a threat to [the prisoner]").

As to the subjective component, plaintiff cannot show that defendants were deliberately indifferent to a substantial risk to his safety. Plaintiff admits he did not seek protection from McRoberts. To the extent plaintiff alleges he told Klee and Condon he was in danger, his concern of being in danger from gang members is not specific enough to establish a substantial threat to his safety. Condon never drew "the conclusion in [his] own mind that [Plaintiff] needed protection" because he was never put on notice that Plaintiff was in any sort of danger. Indeed, Condon took steps at plaintiff's misconduct review hearing to ensure he did not read aloud any potentially endangering information about plaintiff. Finally, plaintiff's letters never made it to Klee's desk, and he never completed an official request for protection form, which are made readily available to inmates.

Overall, a review of the record shows that plaintiff did not request protection; rather, he made multiple offers to MDOC officials to provide names of gang members in exchange for a television set. Thus, his failure to protect claims are unsupported. No reasonable juror could conclude otherwise. Defendants are therefore entitled to summary judgment on plaintiff's Eighth Amendment claim.

### B. First Amendment Retaliation Claim

Defendants also contend that plaintiff's retaliation claim is appropriate for

summary judgment. The Court again agrees.

The First Amendment, among other things, guarantees a person's right "to petition the Government for a redress of grievances." McDonald v. Smith, 472 U.S. 479, 482 (1985). In a prison setting, an inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). It is well-established that "retaliation for the exercise of constitutional rights is itself a violation of the Constitution." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

> The elements of a First Amendment retaliation claim are:
> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

Id. As to what constitutes protected conduct, courts in this district "have consistently held that participation on the Warden's Forum is not activity protected under the First Amendment." Griffin v. Klee, No. 14-CV-14290, 2015 WL 2124998, at *5 (E.D. Mich. May 6, 2015) (citing several decisions). As to the second element, the Sixth Circuit has defined an "adverse action" as "one that would deter a person of ordinary firmness from the exercise of the right at stake." LaFountain v. Harry, 716 F.3d 944, 948 (6th Cir. 2013) (internal citations and quotations omitted). The court of appeals further stated that "[w]hether an act is sufficiently adverse varies based on context. The context here is a prison; and prisoners may be required to tolerate more than average citizens before an action taken against them is considered adverse." Id.

As to the element of causal connection, the Supreme Court has explained that a

11

plaintiff must show "but for" causation to sustain a retaliation claim:

> It is clear, moreover, that the causation is understood to be but-for causation, without which the adverse action would not have been taken; we say that upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of (such as firing the employee). If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.

Hartman v. Moore, 547 U.S. 250, 260 (2006) (internal citations removed) "[B]are allegations of malice" are insufficient to establish a constitutional claim. Thaddeus-X, 175 F.3d at 399.

Here, plaintiff alleges various types of protected conduct under the First Amendment—participation on the Warden's forum and refusing to "snitch"—and three adverse actions—misconduct tickets, moving plaintiff to a different cell with an unhygienic and allegedly dangerous cellmate, and failing to protect plaintiff. Plaintiff however has not offered any facts to support a causal connection between these things. Rather, the gravamen of plaintiff's allegations are that he believes he was retaliated against because he refused to "snitch." But the record in this case shows that it was plaintiff who was offering up information to defendants and other corrections officers in exchange for favors. Plaintiff was not "refusing to snitch," he was offering to. Thus, plaintiff has not alleged cognizable protected conduct and cannot maintain a claim for retaliation against defendants.

Regarding plaintiff's allegations of adverse action, plaintiff alleges that he was moved to a new cell with a dangerous cellmate and was not protected from harm by

12

defendants. However, "prisoners may be required to tolerate more than average citizens before an action taken against them is considered adverse." LaFountain, 716 F.3d at 948. Moving prisoners is a common occurrence in prisons and was so too in this case. Condon stated that plaintiff was moved because ARUS Donaghy expressed concern that Plaintiff was overfamiliar with her, evidenced by his sanctionable attempt to bribe ARUS Donaghy. In addition, although plaintiff says his new cellmate was "dangerous," he does not support that allegation with any evidence. Rather, the documentary evidence in this case suggests plaintiff was actually concerned with how poorly his new cellmate smelled. Perhaps unpleasant, a transfer to a new cell with a cellmate who does not bathe cannot be considered an adverse action, particularly in the prison setting.

Further, plaintiff says that defendants failed to protect him from harm and such a failure constitutes an adverse action. As explained above, defendants did not fail to protect Plaintiff because they did not know of and disregard an excessive risk to his safety.

Finally, plaintiff cannot show a causal connection between his alleged protected conduct and the adverse actions he claimed he suffered. Plaintiff assumes that he was moved to a new cell and was assaulted because he participated on the Warden's forum and refused to "snitch." However, plaintiff provides no evidence that those things were connected. It is easy to connect two events and make self-serving assumptions about that connection, which is why the law requires more. Moreover, the record evidence in this case is contrary to plaintiff's assumption of causation, particularly with regard to the misconduct tickets he received. Plaintiff received a misconduct ticket for possessing

13

contraband and another one for attempting to bribe an officer to suppress the first ticket. The first misconduct was the result of a mass shakedown; plaintiff was not targeted. The second misconduct ticket arose out of plaintiff's own actions in attempting to regain possession of his television set. Thus, plaintiff's allegation that he received misconducts in retaliation to protected conduct is not supported by the record.

Overall, the protected conduct and adverse actions plaintiff identifies are either not cognizable under the law, or they are not supported by record evidence. In addition, plaintiff cannot show a causal connection between the legitimate protected conduct and adverse actions he identifies, specifically regarding misconducts. Therefore, defendants are entitled to summary judgment on plaintiff's First Amendment claim.

## C. Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity because they did not violate any of plaintiff's clearly established constitutional rights. "A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Carroll v. Carman, 135 S. Ct. 348, 350 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that defendant's conduct violated a constitutional or statutory right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). As to this first prong, the Sixth Circuit "assume[s] the truth of all record-supported allegations by the non-movant." Bays v. Montmorency Cty., 874 F.3d 264, 268 (6th Cir. 2017). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. Saucier, 533 U.S. at 201.

14

"Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'" LeFever v. Ferguson, 645 F. Appx. 438, 442 (6th Cir. 2016) (quoting Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006)).  A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage.  See English v. Dyke, 23 F.3d 1086, 1089 (6th Cir. 1994).  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.'" Thompson v. City of Lebanon, Tenn., 831 F.3d 366, 370 (6th Cir. 2016).

Additionally, liability in a § 1983 action cannot be based on a theory of respondeat superior.  See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691 (1978).  Regarding supervisors in prison settings, the Sixth Circuit has said:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 81 (6th Cir. 1995) (internal quotes omitted).

Here, even assuming plaintiff could make out a constitutional violation, defendants are entitled to qualified immunity.  As to Plaintiff's failure to protect claims, defendants did not have knowledge of any excessive risk to plaintiff's safety because he did not make them personally aware of any such risk.  Vague warnings of danger, even

15

if an officer receives those warnings, do not attach liability to that officer without more. Lewis, 518 U.S. at 391; Rhodes, 452 U.S. at 349; Marsh, 937 F.2d at 1069; Hudson, 468 U.S. at 526–27. As to the retaliation claim, plaintiff does not allege direct retaliation against any of the defendants individually. There is no evidence that either Klee or McRoberts directly participated in or implicitly authorized the actions plaintiff considers adverse. As to Condon, a reasonable officer in Condon's shoes would not have suspected that conducting a review hearing on plaintiff's misconduct ticket for bribery was retaliatory when Condon had no prior knowledge of the ticket and when plaintiff himself admitted to the infraction. In addition, a reasonable officer would have similarly moved plaintiff from ARUS Donaghy's unit based on her concerns of overfamiliarity, and plaintiff's admission that he attempted to bribe ARUS Donaghy.

V. Plaintiff's Motion for Summary Judgment

A substantial portion of plaintiff's motion seeks to add new allegations and relitigate several previous discovery issues already ruled upon by the Court. Regarding his evidence to support his retaliation and failure to protect claims, plaintiff presents: (1) his own self-serving statements; (2) his allegations of what defendants told him personally; and (3) theories of conspiracy based on isolated instances with no supported connection to one another. None of this amounts to plaintiff carrying his burden of proving that he is entitled to summary judgment on his claims. Rather, as set forth in detail above, the evidence in this case fails to create a genuine issue of material fact which would require a trial.

VI. Conclusion

For the reasons stated above, defendants' motion for summary judgment is GRANTED.  Plaintiff's motion for summary judgment is DENIED.  This case is DISMISSED.

SO ORDERED.

S/Avern Cohn  
AVERN COHN  
UNITED STATES DISTRICT JUDGE

Dated: 9/18/2019
   Detroit, Michigan